## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CHRISTINA WILLIAMS,**
**Individually and as Personal Representative on Behalf of the**
**Wrongful Death Beneficiaries of BRANDON MITCHELL**                    **PLAINTIFF**

v.                                        CIVIL ACTION NO. 3:23-cv-161-TSL-MTP

**MANAGEMENT & TRAINING CORPORATION,**
**VITALCORE HEALTH STRATEGIES, BOBBIE HUNTER,**
**JONATHAN CHANEY, PAMELA WATKINS, EVELYN**
**DUNN, STEVEN BONNER, and JOHN AND JANE DOES 1-100**      **DEFENDANTS**

### PLAINTIFF'S ORIGINAL COMPLAINT

#### *Jury Trial Demanded*

1. This complaint is brought by Christina Williams (hereinafter, "Plaintiff"), Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiary of Brandon Mitchell, (hereinafter, "Decedent"), by and through undersigned counsel, against Management & Training Corporation, VitalCore Health Strategies, Bobbie Hunter, Jonathan Chaney, Pamela Watkins, Evelyn Dunn, Steven Bonner, and John and Jane Does 1-100.

### JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 1331, 1332, and 1343. The Plaintiff and Defendant are citizens of different states and the claim in question is in excess of $75,000.00. The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3. Venue is appropriate in this Court under § 1391(b), as all acts and/or omissions occurred in Lauderdale County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

**PARTIES**

4.     Plaintiff, Christina Williams, is an adult resident citizen of Onslow County, North Carolina. Her current residence is 204 Sterling Road, Jacksonville, North Carolina, 28546. Plaintiff, the Decedent's surviving adopted sister, brings this action individually and on behalf of the wrongful death beneficiaries of the Decedent, Brandon Mitchell.[1]

5.     Decedent was, at all times material to this Complaint, an adult incarcerated at the East Mississippi Correctional Facility (hereinafter, "EMCF"), located in Meridian, Mississippi. Substantial acts, omissions, and events which caused the Decedent's death took place in Lauderdale County, Mississippi. At the time of the incident which gives rise to this Complaint, Decedent was a 25 year old citizen of the State of Mississippi, and a prisoner incarcerated at EMCF. The Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6.     Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, was given a contract by the Mississippi Department of Corrections ("MDOC") in April 2012 for the management and oversight of the prison's daily operations, under which it had the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee corrections division operates twenty-four (24) correctional facilities throughout the United States, with seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. The acts, omissions and events giving rise to Plaintiff's complaint occurred under MTC's management. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam

---

[1] An heirship determination is pending. The Decedent was legally adopted by the Plaintiff's biological parents, who are both deceased now. Plaintiff is the Decedent's surviving adopted sister. Plaintiff will amend this Complaint to allege the true names and addresses of the surviving heirs and wrongful death beneficiaries of the Decedent at a later time.

jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7.      Defendant, VitalCore Health Strategies (hereinafter, "VitalCore"), is a for-profit company contracted with the Mississippi Department of Corrections to provide care, security, medical and mental healthcare services to the inmates housed at the East Mississippi Correctional Facility ("EMCF"). VitalCore's principal place of business is located at 719 SW Van Buren Street, Suite 100, Topeka, Kansas 66603 and is subject to in personam jurisdiction of this Court by service of process upon its registered agent C.T. Corporation System, located at 645 Lakeland East Drive, Flowood, Rankin County, Mississippi 39232.

8.      Defendant, Evelyn Dunn, was an employee with VitalCore at the East Mississippi Correctional Facility. Defendant Dunn may be served with process at her place of employment at the East Mississippi Correctional Facility, located at 10641 Highway 80 West, Meridian, Mississippi 39307, or her residence.

9.      Defendant, Jonathan Chaney, was an employee with VitalCore at the East Mississippi Correctional Facility. Defendant Chaney may be served with process at his place of employment at East Mississippi Correctional Facility, located at 10641 Highway 80 West, Meridian, Mississippi 39307, or his residence, located at 2086 Lake Circle, Tupelo, Mississippi 38801.

10.     Defendant, Pamela Watkins, was an employee with VitalCore at the East Mississippi Correctional Facility. Defendant Watkins may be served with process at her place of employment at East Mississippi Correctional Facility, located at 10641 Highway 80 West, Meridian, Mississippi 39307, or her residence, located at 10717 Clearwater Trail, Collinsville, Mississippi 39325-9203.

11.     Defendant, Bobbie J. Hunter, was an employee with VitalCore at the East Mississippi Correctional Facility. Defendant Hunter may be served with process at his/her place of employment at East Mississippi Correctional Facility, located at 10641 Highway 80 West, Meridian, Mississippi 39307, or his/her residence.

12.     Defendant, Steven Bonner, was an employee with VitalCore at the East Mississippi Correctional Facility. Defendant Bonner may be served with process at his place of employment at East Mississippi Correctional Facility, located at 10641 Highway 80 West, Meridian, Mississippi 39307, or his residence.

13.     The Plaintiff is ignorant as to the identities of Defendants John and Jane Does 1-100, who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendant herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

14.     On April 24, 2021, the Decedent committed suicide in his cell on Unit 5 at EMCF. Correctional Officer T. Williams found the decedent hanging in cell #114A at approximately 6:13 a.m. when he went to feed the detainees.

15.     Bobbie J. Hunter, Registered Nurse (RN) was notified of a Medical Assistance call by Security at approximately 6:14 a.m. The Decedent was transported to medical with no vital signs. The Decedent was pronounced dead at EMCF Medical Department, Meridian, Mississippi.

4

16.     The Decedent had a documented history of antisocial personality disorder. MTC and its employees were aware of the Decedent's mental health diagnosis. Throughout his stay at EMCF, the Decedent experienced numerous mental health episodes which were passed off as attention-seeking behavioral issues, rather than seriously addressing his suicidal ideations and attempts. MTC officials failed to take proper precautions and safety measures to prevent harm to the Decedent inside the prison.

17.     As early as June 2020, the Decedent was admitted for a psychiatric visit "for a series of events." Kimberly Brown, MSN PMHNP-BC reported "he is known for disruptive behaviors and self-mutilation. He cut his arm yesterday . . . he didn't voice being suicidal." "Nurse was notified later that [the Decedent] tied ligature around his neck with yellow jumpsuit. His arm was still bleeding and it was the only way he could get seen. He was not trying to kill himself. . . These risky behaviors continue to place [the Decedent] at risk for serious injury or accidental death." Brown further stated, "he has a long history of self-mutilation and manipulative behavior that goes along with his ASPD."

18.     On July 24, 2020, MHP Tyisha Cameron reported that, during her visit with the Decedent during segregation rounds, the Decedent had a razor in his possession and was threatening to cut himself. Cameron reported that the Decedent "appeared to be exhibiting behaviors for secondary gain." During the Decedent's mental health psychiatric visit on July 24, 2020, Evelyn Dunn, PMHNP-BC reported that the Decedent was exhibiting "solely behavioral type issues." "He has a longstanding history of engaging in non-suicidal self-injurious behaviors for secondary gains/motives, such as today, to use the phone." Dunn reported that the Decedent's judgment was "fair" and thoughts "coherent."

19.     On September 12, 2020, the Decedent refused to secure his tray portal and would not remove his arm from the flap. Reports show that EMCF was understaffed, stating that "no

5

mental health professionals were on facility grounds at this time."[2]

20.     On October 7, 2020, Jonathan Chaney MHP conducted a mental health visit with the Decedent. Chaney reported "[the Decedent's] conduct still has not improved and [the Decedent] having issues with staff daily or committing self-harm as a means of gaining whatever [he] wants at that time."

21.     On October 16, 2020, the Decedent suffered a self-inflicted cut on his left forearm, deep enough to expose his muscle. Phillip E. Hopson, FNP-C, PMHNP-BC wrote "patient has a history of cutting himself when he can't get his way." On October 17, 2020, the Decedent was yelling and screaming when Donna Miller LPN took gauze and ointment to the Decedent. Miller noted that security staff stated "he had been demanding to be taken out of his cell for quite some time and completely busted the window out of his cell door." Miller noted that "he will not be removed from his cell due to his behavior." Miller gave the Decedent wound care supplies for his cut on his arm. Several hours later, on October 17, 2020, Candis Miles RN reported that the Decedent set fires and previously knocked the window out of his cell door. Miles noted "he is in no apparent distress. The window of his cell has been completely knocked out and he states he knocked it out himself when he got mad." Miles further reported that the Decedent asked Miles "why y'all always refusing me medical treatment?"

22.     On November 6, 2020, Jonathan Chaney, MPH met with the Decedent for a mental health office visit. Chaney reported "client was belligerent and could not be calmed down no matter what was attempted."

---

[2] Understaffing issues at MTC's prisons have been an ongoing issue for years. In November 2022, Mississippi Auditor Shad White announced that his office was demanding nearly two million ($2,000,000) dollars from MTC for failing to have adequate staff on duty at Marshall County Correctional Facility. The Marshall Project published that MTC should have repaid $950,000 for vacant positions and unfilled shifts at the EMCF between 2013 to 2019. https://www.themarshallproject.org/2020/12/09/no-show-prison-workers-cost-mississippi-taxpayers-millions. https://www.localmemphis.com/article/news/local/marshall-county-mississippi-prison-mtc-staffing-issues-audit/522-f51b056c-ef7f-4ac9-b338-3a183cc92de6.

23.     On November 8, 2020, Pamela Watkins DNP, APMHNP-BC was notified by security that the Decedent was having suicidal ideation. Decedent stated, "feel like I want to kill myself . . . feel these folks think I am playing, laughing at me." Decedent mentioned hanging himself; Decedent reported "suicidal off an on" for "about 3 days." Decedent stated, "I want to be taken out of my cell and go to Medical." Watkins noted that Decedent admitted to setting fires the night before so he could kill himself. Watkins concluded that the Decedent was "displaying behavioral ASPD and manipulation to be removed from his cell. He has history of fire setting and disruptive behavior. . . At the end of assessment, [Decedent] denied suicidal ideation. 'Don't call it hurtself, call it relieve stress.'"

24.     On November 9, 2020, the Decedent was not transported to Medical for a scheduled appointment. Rozelta Stokes RN rescheduled the appointment for November 10, 2020. On November 10, 2020, the Decedent "feared for his life," and cut himself on his right forearm and lower left leg.

25.     On November 20, 2020, Johnathan Chaney MHP reported that the Decedent's judgment was 'poor.' No follow up report was conducted regarding the Decedent's self-mutilation on November 10, 2020.

26.     On November 26, 2020, the Decedent deliberately caused a fire in his cell. No further PenPack reports were made until April 24, 2021.

27.     On February 23, 2021, Decedent stated he was suicidal and had a self-inflicted cut to his left arm. The Decedent stated to Bobbie Hunter, RN, "you know how I am, I get stressed out." Steven Bonner, MD conducted a mental health psychiatric visit on February 23, 2021, and reported that the Decedent "made superficial cuts on his arm last night. . . He reports no current SI and denies that he was ever suicidal." Bonner's report further stated that the Decedent cut his wrist and said he wanted to harm himself so he could get out of the room for a while. Bonner

7

noted that the Decedent's thoughts were "coherent", and judgment was "good." Bonner's mental health plan stated "he will be seen tomorrow by MHP or NP for follow up. No changes will be made to overall care plan," and the Decedent was discharged from mental health watch. No follow up was reported.

28.    On March 3, 2021, Evelyn Dunn, PMHNP-BC met with the Decedent for a mental health psychiatric visit. Dunn reported that the Decedent asked for medication. Dunn noted that the Decedent's reports "do not indicate a need for medications (not sure what the secondary gain to his request for medications today). Will continue at LOC B (engages in episodes of disruptive behaviors – these are behavioral issues; however, require mental health intervention, to include cutting self)."

29.    On April 7, 2021, Jonathan Chaney MHP met with the Decedent for a mental health office visit. Chaney reported that "Client actions are usually for a secondary gain . . . client is now using segregation as a means of not going back into general population."

30.    On April 15, 2021, Evelyn Dunn PMHNP-BC met with the Decedent for a mental health psychiatric visit because the Decedent reported suicidal thoughts. Dunn noted that "he continues to mention vaguely that he just needs some time. I attempt to discuss that we may have to place on property restriction due to no beds in medical. He immediately stated that, 'nobody is coming in here to get nothing,' referring t[hat] he would become combative and not allow security to enter his cell. He is no longer reporting needing some time in medical." Dunn further reported that "it is quite obvious that he has some secondary agenda to asking for some time in medical. He has a h[istory] of engaging in such behaviors for secondary gains. His behaviors consistent with his baseline (ASPD issues). I am not sure what his agenda is today; however, clearly some secondary gain/agenda." At a follow up appointment on April 16, 2021, Dunn noted that "his acting out behaviors are minor related (setting fires) – all to get attention to what

8

he is seeking at the time (some secondary agenda)."

31. On April 20, 2021, Jonathan Chaney MPH's mental health weekly segregation round reports stated that the Decedent's judgment was 'poor.' No other notes were recorded, and no follow up was conducted until the Decedent was found hanging in his cell on April 24, 2021.

32. Upon information and belief, MTC officials failed to conduct the necessary amount of security checks required for restrictive housing. Such actions and inactions contributed to the Decedent's death.

33. MTC was understaffed on the day the Decedent committed suicide. MTC has a pattern and/or practice of understaffing at EMCF. The guards who were on duty were inadequately trained and/or supervised to handle the prison population which exists at EMCF. MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well-being of the Decedent.

34. On April 24, 2021, Housing Unit 5 was short of staff. Due to understaffing issues, Officer Williams was unable to complete all necessary security checks that restrictive housing required. Williams reported that he was placed on Housing Unit 3 until his shift started, and once his shift began, he was placed on Housing Unit 5 where he conducted security checks from 8:00 p.m. until 10:00 p.m. Officer A. Phillips helped Williams on Housing Unit 5 because Williams was short staffed. Williams was also helping on Housing Unit 2 during his shift because Housing Unit 2 was short staffed. Officer Williams was responsible for Housing Unit 2, Housing Unit 3, and Housing Unit 5 due to staffing issues at the EMCF.

35. On April 24, 2021, Officer A. Phillips reported that Housing Unit 5 was short of staff. Phillips was unable to complete all necessary checks that restrictive housing required due to understaffing issues. Phillips was assisting security throughout the night and morning. Phillips stated that only two (2) officers were on the floor on Unit 5. Since Williams was helping on

9

Housing Unit 2 and Housing Unit 3 while he was also responsible for Housing Unit 5, the two (2) officers on the floor of Housing Unit 5 were not present for the entirety of their shift. Understaffing issues at the EMCF directly contributed to the Decedent's death.

36.     On April 24, 2021, at approximately 6:14 a.m., Security found the Decedent hanging in his cell, Unit 5A 114. The Decedent had no vital signs and his body was cold and stiff. Metro was called at 0625. Metro assessed the Decedent and noted no vital signs, EKG was a flat line, and rigor mortis had set in. Metro called the Coroner, gave a report, and was advised that the Decedent was pronounced deceased.

## § 1983 CAUSES OF ACTION:
## EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS:
## PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF
## CONFINEMENT[3]

37.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 36 hereinabove. Defendants MTC and VitalCore had the responsibility and duty to supervise, oversee and control the training and job performance of staff, as well as the daily operations of the EMCF. Defendants had the duty to ensure that EMCF was maintained in a safe condition, suitable for human occupation and compliant with constitutional requirements. Defendants had the duty to ensure that the officials acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States, and did not deprive inmates of their rights guaranteed under the United States Constitution and laws. This included the duty to ensure that the conditions of inmate confinement did not deprive inmates of their right to reasonable, adequate and timely medical care, and did not otherwise impose what may constitute as cruel and unusual punishment.

---

[3] Plaintiff provided VitalCore and its employees a Notice of Claim pursuant to Mississippi Code Ann. § 15-1-36 (1972) more than 60 days prior to filing this Complaint.

38.     By and through Defendants deliberate indifference to the safety of the Decedent on and before April 24, 2021, and the establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated the clearly established constitutional rights of the Decedent, including but not limited to:

A)      Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

B)      Decedent's right not to be deprived of liberty without due process of law;

C)      Decedent's right to be safe and protected from injuries while in Defendants' custody; and

D)      Decedent's right to be protected by the prison officials and guards while under their control.

39.     MTC maintained and operated the EMCF in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates detained in the EMCF in every aspect.

40.     Said conditions of confinement also included many policies, practices and customs that deprived most, if not all, inmates including the Decedent, of their right to reasonable, adequate and timely medical care. Some of the policies, customs and practices which constituted said elements included, but were not limited to:

A)      Regularly denying, delaying or interfering with inmate requests for medical care;

B)      Ignoring, delaying or failing to promptly comply with the treatment orders of the doctors; and

C)      Not promptly providing reasonable medical care and treatment.

41.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated and pervasive deprivations of the Decedent's right to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at EMCF.

42. Such unwritten policies, customs and practices include but are not limited to the following:

A) Inadequate and improper training, supervision and discipline of EMCF corrections officers;

B) Inadequate and improper procedures and practices in screening, hiring, training, and supervising staff;

C) Failure to properly classify inmates;

D) Failing to conduct safety checks in housing units or having officers assigned to housing units;

E) Failing to adequately staff EMCF with trained and qualified guards and allowing the prison to be understaffed.

43. As a direct and foreseeable result of Defendants' actions, Plaintiff suffered damages including but not limited to, emotional distress, mental anguish, as well as pain and suffering.

44. From Defendants MTC and VitalCore, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Brandon Mitchell is entitled as a result of the conditions of Decedent's confinement, and the damages he suffered therefrom. Plaintiff further seeks recovery of punitive damages from Defendant VitalCore, Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, and Steven Bonner, for its conduct in callous and reckless disregard for the rights, welfare and medical needs of Decedent.

## NEGLIGENCE/GROSS NEGLIGENCE

45. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 44 hereinabove.

46. At all times relevant herein, Defendants and their employees had a duty to exercise ordinary care for the inmates at EMCF, including the Decedent. Defendants and their employees breached that duty, by failing to use the ordinary care that a reasonable person would

12

use to avoid and prevent injury to others, i.e. in the case *sub judice*, to provide the appropriate, reasonable and necessary medical care to avoid and prevent injury- the failure of which led directly to the incontrovertible permanent damage sustained by the Plaintiff. This breach was so egregious as to amount to gross negligence.

47.     The death of Brandon Mitchell was the reasonably foreseeable outcome of Defendants and their employees' acts and omissions. These acts and/or omissions were substantial factors in causing his death, and the accompanying damages suffered by the Plaintiff.

## MEDICAL MALPRACTICE

48.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 47 hereinabove.

49.     Defendant VitalCore, by and through Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and the Doe Defendants, was negligent and/or grossly negligent in failing to properly care for, diagnose and treat the Decedent.

50.     The employees of VitalCore were acting within the course and scope of their employment with VitalCore. VitalCore is liable for the acts and omissions of these named and Doe Defendants pursuant to the Mississippi Medical Malpractice Statute.

51.     VitalCore, by and through Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and the Doe Defendants, breached their duties to Decedent by failing to properly diagnose and treat him, despite his ever-worsening medical and mental symptoms. VitalCore, Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and Doe Defendants failed to exercise the degree of care, skill and learning expected of reasonably prudent health care providers in the State of Mississippi acting in the same or similar circumstances. These Defendants committed medical malpractice under the law by failing to

13

diagnose and treat the Decedent. This medical malpractice directly and proximately resulted in the harms and damages alleged herein.

## NEGLIGENT HIRING AND SUPERVISION

52.     Plaintiff incorporates all allegations set forth in paragraphs 1 through 51 hereinabove.

53.     Plaintiff alleges Defendants MTC and VitalCore negligently hired, supervised and retained their employees and agents, inter alia, by A) failing to properly care for and ensure the Decedent's health, safety and well-being while incarcerated at EMCF; B) properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and C) were otherwise negligence in their care and treatment of the Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

54.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 53 hereinabove.

55.     Defendants and Doe Defendants 1-100 acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent the Decedent's death. At all times relevant, each Defendant owed a duty to the Decedent to ensure his health, safety and well-being, and the Defendants breached this duty. The actions and inactions of Defendants and Doe Defendants 1-100 led directly to the death of Brandon Mitchell. MTC and VitalCore, as Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and the Doe Defendants 1-100's employers, are liable for their actions which were undertaken during the course and scope of their employment.

56.     VitalCore is also responsible for the actions and inactions alleged herein against them, Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and Doe

14

Defendants 1-100, which caused the damages suffered by the Plaintiff. Further, such actions and/or inactions by the named and Doe Defendants were committed within the course and scope of their employment with VitalCore.

## PUNITIVE DAMAGES

57.    The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 56 hereinabove.

58.    MTC, VitalCore, Evelyn Dunn, Jonathan Chaney, Pamela Watkins, Bobbie Hunter, Steven Bonner, and Doe Defendants 1-100, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

59.    The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard of the safety of the Decedent. Punitive damages should be awarded against the Defendants. Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress, mental anguish, and pain and suffering.

## PRAYER FOR RELIEF

The Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following relief:

A.    Compensatory damages of, from and against the Defendants, in amount to be determined by this Court.

B.    Punitive damages of, from and against the Defendants, in their individual capacities in an amount to be determined by this Court.

C.    Payment of medical expenses.

D.    Reasonable attorney's fees and all costs of this court.

15

E.      Pre and post judgment interest.

F.      Such other general and specific relief as appears reasonable and just in this cause.


RESPECTFULLY SUBMITTED, THIS the 3rd day of March, 2023.

                                        CHRISTINA WILLIAMS


                            BY:     */s/ Courtney D. Sanders*
                                    COURTNEY D. SANDERS


OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COURTNEY D. SANDERS (MB# 106444)
COXWELL & ASSOCIATES, PLLC
500 North State Street
Jackson, Mississippi 39201
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
courtneys@coxwelllaw.com
***Attorneys for Plaintiff***

## CERTIFICATE OF CONSULTATION

The undersigned attorney has reviewed the facts of this case and has consulted with at least one (1) expert, pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, who is qualified to give expert testimony as to a standard of care or negligence and whom the undersigned attorney reasonably believes is knowledgeable in the relevant issues involved.  The undersigned attorney has concluded on this basis for the commencement of such action.

BY:    /s/ Courtney D. Sanders
       COURTNEY D. SANDERS (MB# 106444)
       COXWELL & ASSOCIATES, PLLC

## CERTIFICATE OF SERVICE

This is to certify that I, Courtney D. Sanders, have on this day filed the above and foregoing **Plaintiff's Original Complaint** with the Clerk of the Court via the ECF system, which sent notice of same to all counsel of record.

This the 3rd day of March, 2023.


BY:    _/s/ Courtney D. Sanders_
       COURTNEY D. SANDERS